**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **R.C.,**<br><br>Plaintiff,<br><br>v.<br><br>**COMMISSIONER OF SOCIAL SECURITY,**<br><br>Defendant. | Civil Action No. 25-13690 (ZNQ)<br><br>**OPINION** |

**QURAISHI, District Judge**

**THIS MATTER** comes before the Court upon Plaintiff R.C.'s ("Plaintiff") appeal of an Administrative Law Judge's ("ALJ") denial of her application for Disability Insurance Benefits ("DIB") under Title II and Title XVI of the Social Security Act, 42 U.S.C. § 402 *et seq.* (the "Act"). (ECF No. 1.) After the appeal was filed, Defendant Commissioner of Social Security ("Defendant") filed a Motion for Remand, conceding that the ALJ's opinion was not supported by substantial evidence. ("Motion," ECF No. 9.) Plaintiff opposed the Motion, arguing that the Court should award her DIB instead of remanding the matter to the ALJ for further administrative proceedings.[1] (ECF No. 12.)

[1] On February 13, 2026, Plaintiff filed a Motion for Extension of Time to file a brief in opposition to Defendant's Motion for Remand. (ECF No. 11.) Because Defendant consented to the extension request, and the Court finds good cause for the extension, Plaintiff's Motion for an Extension of Time is **GRANTED**. (ECF No. 11.)

After reviewing the parties' submissions and the Administrative Record ("AR," ECF No. 4), the Court will **DENY** Defendant's Motion, **VACATE** the ALJ's decision and **REMAND** this matter to the Social Security Administration for an award of disability benefits within sixty days.

## I. BACKGROUND AND PROCEDURAL HISTORY

### A. PROCEDURAL HISTORY

Plaintiff filed her claim for DIB on May 20, 2019, alleging disability beginning in June 2018, due to non-Hodgkins lymphoma, cognitive disfunction from chemotherapy, and lupus Sjogren syndrome. (AR at 62, 298.) Her application was denied initially on June 26, 2019, and upon reconsideration on August 7, 2019. (*Id*. at 72, 86.) After filing a written request, the ALJ held a hearing in April 2019 and denied Plaintiff's claim in a written decision dated June 14, 2021. (*Id.* at 18.) In his decision, the ALJ determined that Plaintiff was not disabled at any time from Plaintiff's onset date through the date of the decision. (*Id*.) Plaintiff subsequently sought review by the Appeals Council, which denied her request on October 19, 2021. (*Id*. at 1-7, 1388). Plaintiff then filed an appeal in the United States District Court for the District of New Jersey, whereby Chief Judge Freda Wolfson ("Judge Wolfson") remanded the matter to the ALJ for further proceedings on October 18, 2022. (*Id*. 1413–32.) On September 15, 2023, the same ALJ held another telephonic hearing and subsequently found that Plaintiff was disabled as of March 13, 2023, when her age category changed from "closely approaching advanced age" to "advanced age." (*Id.* at 1452–54.) However, the ALJ determined that Plaintiff was not disabled prior to March 13, 2023. (*Id.* at 1453.)

In August 2024, the Appeals Council reviewed the November 2023 decision and vacated it only with respect to the issue of whether Plaintiff was disabled prior to March 13, 2023. (*Id*. at 1470–72.) The case was then remanded to a new ALJ to articulate the persuasiveness of medical opinions and prior administrative medical findings in the case. (*Id*. at 1471.) On May 19, 2025,

the new ALJ found that Plaintiff was not disabled from June 25, 2018 through March 13, 2023. (*Id*. at 1285.)

Plaintiff appealed that decision to this Court. On January 5, 2026, Plaintiff, through her counsel, filed a brief which challenged the ALJ's evaluation of medical evidence. (ECF No. 7.) Defendant filed a Motion for Remand for further administrative proceedings on February 4, 2026. (ECF No. 9.) Plaintiff filed an Opposition on March 3, 2026, arguing that this Court should award her disability benefits as opposed to remanding the matter once again to the ALJ for further proceedings. (ECF No. 12.)

## B. BACKGROUND

### 1. Plaintiff's Background and Testimony

Plaintiff was born on March 14, 1968 and was fifty-three years old when the ALJ initially denied her claim for disability benefits. (AR at 1347.) Before the onset of her alleged disability, Plaintiff worked as a middle school special education teacher for eighteen years. (*Id*.) Plaintiff testified that she could no longer work beginning in 2018 because she was experiencing memory loss and comprehension problems. (*Id*. at 1804–13.) She also testified that she has trouble multitasking and has experienced increased anxiety. (*Id*. at 1808–09.)

Plaintiff further testified that she stays home a lot because of her increased anxiety and is very lonely as a result. (*Id*. at 1811.) She further stated that she relies on her husband and friends to assist her with simple tasks throughout her life. (*Id*. at 1812.)

### 2. Medical Opinions

In April 2018, Plaintiff underwent a neuropsychological evaluation, the results of which were documented in a July 9, 2018 joint report by Dr. Mihir Shah, Psy.D., Dr. Robert B. Sica, Ph.D., and Dr. Steven P. Greco, Ph.D. of Neuropsychology Rehabilitation Services ("NRS") (the "July 2018 NRS Report"). In the July 2018 NRS Report, the doctors stated that "Plaintiff's

neurological findings reflect diffuse deficits consistent with cognitive dysfunction secondary to chemotherapy, an elevated psychological state and pre-existing, previously diagnosed Attention-Deficit Hyperactivity Disorder." (*Id*. at 2178–79.) They also reported that "her profile was consistent with an adjustment disorder with mixed emotions" and that "[h]er clinical profile reflected mild-to-moderate elevation with health concerns, worry, anxiety, and difficulty thinking clearly." (*Id*. at 2182.) The doctors also opined that Plaintiff would "experience problems with complex activities of daily life," and that she had the following impairments: (1) preparing own meals; (2) independent activities of daily living; (3) daily schedule/important things; (4) level of independence; (5) adjusting to unexpected changes; (6) driving; (7) attention-concentration; (8) information processing; (9) detailed instructions; (10) maintain schedule/regular attendance; (11) ordinary routine without supervision; (12) simple work-related decision; (13) work; and (14) work at a consistent pace. (*Id.* at 2182.) The July 2018 NRS Report concluded that Plaintiff should not return to work as a teacher and should apply for temporary disability. (*Id.* at 2183.)

In a follow up letter on February 8, 2019 (the "February 2019 NRS Letter"), Dr. Sica and Dr. Greco opined that Plaintiff's cognitive deficiencies would make it difficult for her to perform activities of daily living. (*Id.* at 955.) On March 21, 2019, Drs. Greco and Hillebrecht wrote another letter (the "March 2019 NRS Letter"), which stated that Plaintiff has "demonstrated progress with cognition and emotional functioning," but that she "continues to experience problems with information processing, multi-tasking, and memory." (*Id.* at 957.) The March 2019 NRS Letter also stated that Plaintiff would "remain out of work" pending the results of an upcoming neuropsychological examination. (*Id.*)

On May 1, 2019, the NRS team conducted another neuropsychological examination to do a comparative analysis of Plaintiff's progress since July 2018. (*Id.* at 779.) In a subsequent report (the "May 2019 NRS Report"), the doctors noted that Plaintiff's neuropsychological findings

remained unchanged, with mild areas of improvement and decline. (*Id.*) Plaintiff's results from May 2018 showed that she was mildly impaired in independent activities of daily living, adjusting to unexpected changes, remembering work procedures, following short, simple instructions, and following routine without supervision, among others. (*Id.* at 783.) Plaintiff was moderately impaired in remembering daily schedule and important things, general attention, sustained attention, carrying out detailed instructions, and making simple work-related decisions, among others. (*Id.*) The May 2019 NRS Report concluded by stating, "[g]iven her unchanged diffuse cognitive deficits and psychological state, at this time, the patient should apply for permanent disability and not return to work as a teacher." (*Id.* at 784.)

In a letter dated August 1, 2019 (the "August 2019 NSR Letter"), Drs. Hillebrecht and Greco opined that Plaintiff would have difficulty with "following short, simple instructions, carrying out detailed instructions, following routine without supervision, making simple work related decisions, asking for help, and responding to changes in the work setting." (*Id.* at 1023.)

On March 18, 2021, Dr. Anela Noy submitted a statement based on her treatment of Plaintiff since 2016. (*Id.* at 2291.) Dr. Noy reported that Plaintiff suffers from depression, memory loss, and has impaired attention/concentration. (*Id.* at 2295.) As a result, Dr. Noy opined that Plaintiff is incapable of "low stress" work due to her cognitive dysfunction. (*Id.* at 2298.) Dr. Noy further opined that Plaintiff would be off task from work more than 25% of the workday. (*Id.* at 2297.) On June 29, 2023, Dr. Noy reiterated this opinion, noting that Plaintiff was still unable to perform "low stress" work and would be off task for more than 25% of the workday. (*Id.* at 2291, 2294.)

On January 5, 2023, Dr. Lauren Gashlin submitted a questionnaire on Plaintiff's mental impairment, which was based on her monthly treatment sessions with Plaintiff. (*Id.* at 2188.) Dr. Gashlin opined that Plaintiff had an "extreme limitation" (i.e., no useful ability to function) with

regard to the following mental activities: (1) carrying out detailed instructions; (2) maintaining attention and concentration for extended periods; (3) comping a normal work day/week without interruption from psychologically based symptoms; (4) performing at a consistent pace without an unreasonable number and length of rest periods; (5) remembering locations and work-like procedures; (6) understanding and remembering detailed instructions; (7) responding appropriately to changes in the work setting; and (8) setting realistic goals or making plans independently of others. (*Id.* at 2188–89.) Dr. Gashlin further opined that Plaintiff would be absent from work more than 50% of the time due to her mental impairments. (*Id.* at 2189.)

3. ALJ Decision

As discussed above, the ALJ denied Plaintiff's application for disability benefits. The ALJ's May 19, 2025 decision followed the Social Security Administration's five-step sequential evaluation process for determining whether an individual is disabled under the Social Security Act. (*Id.* at 1270.)

At step one of the evaluation, the ALJ concluded that Plaintiff "did not engage in substantial gainful activity during the period from the alleged onset date of June 25, 2018 through March 13, 2023, the date she was found disabled." (*Id*. at 1273.)

At step two, the ALJ found that Plaintiff had the following severe impairments: "history of non-Hodgkin's lymphoma with chemotherapy-induced cognitive disorder, lupus, Sjogren's syndrome, anxiety, and attention deficit hyperactivity disorder." (*Id.*)

At step three, the ALJ found that Plaintiff "did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1." (*Id.*) Specifically, the ALJ determined that Plaintiff does not have aggressive lymphoma that has "persisted or recurred following initial antineoplastic therapy, or indolent lymphoma requiring initiation of more than one antineoplastic treatment

regimen within a consecutive twelve-month period." (*Id*. at 1274.) The ALJ determined that the "paragraph B" criteria were not satisfied because Plaintiff's mental impairments did not cause "at least two 'marked' limitations or one 'extreme' limitation." (*Id.* at 1275.) The ALJ also determined that the "paragraph C" criteria were not satisfied because she has only "a minimal capacity to adapt to changes in [her] environment or to demands that are not already part of [her] daily life." (*Id.*)

At step four, the ALJ discussed Plaintiff's medical history, record evidence, and hearing testimony, and determined that Plaintiff "has the residual functional capacity ("RFC") to perform light work," except that she has the capacity to lift and carry twenty pounds and ten pounds frequently. (*Id*. 1275–76.) The ALJ also determined that Plaintiff "can frequently climb up ramps and stairs," but "cannot climb ladders, ropes or scaffolds." (*Id.*) Relevant to the present appeal, the ALJ determined that Plaintiff is "able to understand, remember and carry out simple, repetitive tasks in a routine environment with few changes," and that "[s]he can work for two hours before needing a standard 15-minute break." (*Id.*)

In crafting Plaintiff's RFC, the ALJ made several findings with respect to the medical opinion evidence. First, the ALJ determined that the July 2018 NRS Report and May 2019 NRS Letter were unpersuasive because they were rebuttal reports regarding neuropsychological testing, were made in the context of Plaintiff's capacity to perform work at her former level as a teacher, and were not consistent with the objective findings from the May 2019 examination. (*Id.* at 1280.) Regarding the May 2019 examination, the ALJ noted that Plaintiff only had a mild impairment in her ability to follow short, simple instructions, remember work procedures, follow a routine without supervision, and complete independent activities of daily living. (*Id.*)

The ALJ also determined that the August 2019 NRS Letter was not persuasive because it was inconsistent with medical evidence, including the fact that Plaintiff attained an IQ score of 80

to 84, performed adequately on treatment computer exercise programs, and her verbal comprehension was within normal limits on IQ testing. (*Id.*) The ALJ also noted that Plaintiff's activities of daily living were not significantly impacted because she reported being able to engage in physical and mental capabilities required to perform various tasks. (*Id.*)

With respect to Dr. Gashlin's opinion, the ALJ determined that it was unpersuasive to the extent Dr. Gashlin opined that Plaintiff was unable to perform simple, unskilled work. (*Id.* at 1281.) The ALJ reasoned that the objective evidence demonstrated that Plaintiff had an IQ score of 80 to 84 and had a verbal comprehension score that was within normal limits. (*Id.*) With respect to Dr. Noy's opinions, the ALJ found them to be unpersuasive because they were purportedly inconsistent with her treatment notes. (*Id.*)

At step five, the ALJ found that Plaintiff "is unable to perform any past relevant work" as a Teacher Resource. (*Id.* at 1283.) However, after considering Plaintiff's age, education, work experience, and RFC, the ALJ determined that Plaintiff "is capable of making a successful adjustment to other work that exists in significant numbers in the national economy." (*Id.*) The ALJ consequently concluded that Plaintiff was not disabled under the Social Security Act prior to March 13, 2023. (*Id.* at 1285.)

## II. <u>SUBJECT MATTER JURISDICTION</u>

The Court has subject matter jurisdiction pursuant to 42 U.S.C. § 405(g), which authorizes judicial review of final decisions of the Commissioner of Social Security.

## III. <u>LEGAL STANDARD</u>

### A. STANDARD OF REVIEW

On appeal, a district court "shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g);

*Matthews v. Apfel*, 239 F.3d 589, 592 (3d Cir. 2001). To survive judicial review, the Commissioner's decision must be supported by substantial evidence. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citing *Consol. Edison Co. of N.Y. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). In other words, substantial evidence "may be somewhat less than a preponderance of the evidence." *Ginsburg v. Richardson*, 436 F.2d 1146, 1148 (3d Cir. 1971) (citation modified), *abrogated on other grounds by Sims v. Apfel*, 530 U.S. 103 (2000).

In reviewing the record for substantial evidence, the court "may not weigh the evidence or substitute [its] own conclusions for those of the fact-finder." *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005) (citation modified) (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992). Even if the court would have decided differently, it is bound by the ALJ's decision if it is supported by substantial evidence in the record. *See Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001). The court must "review the record as a whole to determine whether substantial evidence supports a factual finding." *Zirnsak v. Colvin*, 777 F.3d 607, 610 (3d Cir. 2014) (citing *Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F.3d 429, 431 (3d Cir. 1999)). And "[s]ince it is apparent that the ALJ cannot reject evidence for no reason or for the wrong reason," courts require "an explanation from the ALJ of the reason why probative evidence has been rejected" to determine whether the reasons for rejection were improper. *Cotter v. Harris*, 642 F.2d 700, 706–07 (3d Cir. 1981).

### B. APPLICABLE LAW

Under the Social Security Act, a person is "disabled" if he or she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last

for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). The Act further states:

> [A]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Social Security Act establishes a five-step sequential evaluation process for determining whether a plaintiff is disabled within the meaning of the statute. *See* 20 C.F.R. § 404.1520(a)(4)(i)–(v). "The claimant bears the burden of proof at steps one through four, and the Commissioner bears the burden of proof at step five." *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (citing *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007)). The analysis proceeds as follows.

At step one, the ALJ determines whether a claimant is currently engaged in substantial gainful activity. *See* 20 C.F.R. § 404.1520(b). If so, the inquiry ends because the claimant is not disabled. *See* 20 C.F.R. § 404.1520(a)(4)(i).

At step two, the ALJ decides whether the claimant has a "severe impairment" or combination of impairments that considerably restricts the claimant's physical or mental ability to do basic work activities. *See* 20 C.F.R. § 404.1520(c). If the claimant does not have a severe impairment, then the inquiry ends because the claimant is not disabled. *See* 20 C.F.R. § 404.1520(a)(4)(ii). Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the claimant's impairment or combination of impairments meets the severity of an impairment in the Listing of Impairments found at 20 C.F.R.

§ 404, Subpart P, Appendix 1. *See* 20 C.F.R. § 404.1520(d). If so, then the claimant is presumed to be disabled if the impairment has lasted or is expected to last for the specified duration. *See* 20 C.F.R. § 404.1520(a)(4)(iii). Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the claimant's RFC and analyze whether Plaintiff can perform past relevant work. *See* 20 C.F.R. § 404.1520(e). Under 20 C.F.R. § 404.1545, a claimant's RFC is "the most [he or she] can still do" despite limitations "that affect what [he or she] can do in a work setting." If the claimant can perform past relevant work, then the inquiry ends because the claimant is not disabled. *See* 20 C.F.R. § 404.1520(f). Otherwise, the ALJ proceeds to the final step.

At step five — the final step — the ALJ must decide whether the claimant, considering the claimant's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. *See* 20 C.F.R. § 404.1520(g). If the ALJ determines that the claimant can do so, then the claimant is not disabled. *See* 20 C.F.R. § 404.1520(a)(4)(v). Otherwise, the claimant is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months. *See* 42 U.S.C. § 1382c(a)(3)(A).

## IV. <u>DISCUSSION</u>

On appeal, Plaintiff asserts that the ALJ's decision is not supported by substantial evidence. First, Plaintiff contends that the ALJ exceeded the scope of the Appeals Council's August 1, 2024 remand order by finding certain medical opinions unpersuasive, when those same medical opinions had previously been found to be persuasive by a different ALJ. ("Appeal Br.," at 19, ECF No. 7.) According to Plaintiff, the Appeals Council's remand was limited to determining why certain medical opinions were not factored into Plaintiff's RFC, and that the ALJ's decision to instead declare these opinions unpersuasive changed the previous finding altogether. (*Id.*) Second,

Plaintiff contends that this new finding is unsupported by the record. (*Id.* at 20–29.) Accordingly, Plaintiff requests that this Court reverse the ALJ's decision and remand this matter with a finding of disability and an award of benefits. (*Id.* at 29.)

Defendant concedes that the ALJ erred and that Plaintiff's claim warrants further evaluation. ("Moving Br.," ECF No. 9-1 at 3.) Specifically, Defendant states that the ALJ should further evaluate the opinion evidence, such as Dr. Gashlin's and Dr. Noy's opinion, to determine whether Plaintiff is disabled. (*Id.* at 7.) Defendant further argues that remand, rather than award of direct benefits, is the appropriate remedy because there are factual issues that still need to be resolved. (*Id.*) Specifically, Defendant points to two state agency medical opinions that found Plaintiff, despite her impairments and limitations, was able to perform a range of light work involving simple instructions. (*Id.* at 4–5.) Defendant also points to Plaintiff's self-reported ability to engage in a wide variety of daily activities, including going to the grocery store, roller blading, gardening, cleaning, exercising, watching television, doing laundry, and socializing. (*Id.* at 5.)

A district court should award benefits "only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Brownawell v. Comm'r of Soc. Sec.*, 554 F.3d 352, 358 (3d Cir. 2008) (citation modified); *see also Diaz v. Berryhill*, 388 F. Supp. 3d 382, 391–92 (M.D. Pa. 2019) (holding that for a district court to award benefits, the administrative record must be fully developed and the record must establish through substantial evidence that the claimant is disabled). This decision is "especially appropriate when the disability determination process has been delayed due to factors beyond the claimant's control." *Brownawell*, 554 F.3d at 358; *see also Michelle N. v. Kijakazi*, Civ. No. 22-10, 2022 WL 10048869, at *5 (D.N.J. Oct. 17, 2022) (holding that that the decision to remand or award benefits "requires weighing two factors," the length of the delay and whether the administrative record supports that the plaintiff is entitled to benefits).

Whether there has been an excessive delay will turn on the number of years that have passed and whether there have been prior appeals and remand orders. *See Michelle R.Q. v. Bisignano*, 807 F. Supp. 3d 462, 475 (E.D. Pa. 2025) (citation omitted).

As an initial matter, the Court notes that there has been an excessive delay in this case. Plaintiff filed her initial claim for disability over six years ago. Since then, her claim was appealed to the United States District Court for the District of New Jersey, where Judge Wolfson held that the ALJ's opinion was not supported by substantial evidence and ordered that Plaintiff's case be remanded for further administrative proceedings. The ALJ subsequently issued an unfavorable opinion, which was remanded back to the ALJ once again, this time by the Appeals Council. After another unfavorable opinion, Plaintiff filed the present appeal. The six-year delay and two remand orders undoubtedly constitute an excessive delay. *See Gines v. Kijakazi*, Civ. No. 21-594, 2021 WL 9793767, at *1 (M.D. Pa. Dec. 13, 2021) (finding delay where the case had been pending for seven years and had been remanded to the ALJ once); *Michelle R.Q.*, 807 F. Supp. 3d at 476 (holding that there was a delay where the case had been pending for six years and the ALJ erred three times); *Cordero v. Kijakazi*, 597 F. Supp. 3d 776, 821 (E.D. Pa. 2022) (holding that the Commissioner should not have "another bite at the apple" where it already had three chances to prove its case and there was not a "substantial hole" in the claimant's medical record).

Given the length of the delay, the only issue that remains for the Court is whether the "administrative record of the case has been fully developed," and if so, whether there is "substantial evidence on the record" that establishes that Plaintiff is "disabled and entitled to benefits." *Brownawell*, 554 F.3d at 358 (citation modified). As to the former requirement, it appears that the record has been fully developed. Indeed, the administrative record spans nearly 2500 pages and consists of dozens of medical opinions and treatment records. *See Walls v. Saul*, Civ. No. 20-2437, 2021 WL 214308, at *4 (E.D. Pa. Jan. 21, 2021) ("The record in this case is

voluminous, amounting to over 1600 pages; hence, there is no doubt that it is fully developed."). Moreover, Defendant does not credibly argue that additional medical opinions, treatment records, or testimony is necessary.[2] Accordingly, the Court finds that the "administrative record of the case has been fully developed." *Brownawell*, 554 F.3d at 358 (citation modified) (holding that "the record is unlikely to change" after two hearings before an ALJ, two petitions to the appeals council, and two appeals to the district court).

The question of whether there is substantial evidence in the record to support a finding that Plaintiff is disabled and entitled to benefits is, of course, the more difficult one. Nevertheless, the Court concludes that the ALJ committed reversible error at step four when crafting Plaintiff's RFC. As explained below, the ALJ improperly discounted the medical opinions of Plaintiff's treating physicians. Had those opinions been properly evaluated, Plaintiff's RFC would have included additional limitations which would have precluded Plaintiff from engaging in substantial gainful activity and resulted in an award of DIB.

In crafting Plaintiff's RFC, the ALJ improperly discounted the opinions of Plaintiff's treating physicians and made findings that were inconsistent with Judge Wolfson's remand order. Specifically, the ALJ found that the July 2018 NRS Report and March 2019 NRS Letter were unpersuasive because they were "rebuttal reports regarding neuropsychological testing, in the context of private insurance/disability through her employer." (AR at 1280.) The ALJ further reasoned that these reports were inconsistent with objective evidence from May 2019 indicating that Plaintiff had only a "mild impairment in her ability for following short, simple instructions,

[2] Defendant contends that remand is necessary for further fact-finding to determine the persuasiveness of Dr. Gashlin's opinion. (Moving Br. at 7.) Yet Defendant does not explain what additional fact-finding is needed, identify any missing evidence, or suggest what additional documentation or testimony would assist the ALJ in evaluating Dr. Gashlin's opinion. Moreover, this argument is undermined by the fact that the period for which Plaintiff seeks disability benefits ended in March 2023. Any medical evidence developed on remand would necessarily be retrospective and less probative than Plaintiff's treatment records from that time.

remembering work procedures, following a routine without supervision and independent activities of daily living." (*Id.*) However, even assuming that the July 2018 NRS Report and March 2019 NRS Letter were prepared as rebuttal reports in connection with Plaintiff's private disability claim[3], the ALJ failed to explain why that circumstance undermined the validity of the underlying neuropsychological findings or rendered the opinions inconsistent with the broader medical record. The purpose for which a medical opinion is prepared does not, standing alone, diminish its reliability or probative value. Rather, the ALJ was required to evaluate the opinions based on their "supportability" and "consistency" with the evidence of record. *See* 20 C.F.R. § 414.1520c. By discounting the opinions simply because they were prepared in the context of Plaintiff's private disability proceedings, the ALJ failed to provide a legally sufficient basis for rejecting the treating physicians' conclusions.

Moreover, contrary to ALJ's findings, Plaintiff's May 2019 neurological examination supports and is consistent with — and indeed corroborates — the July 2018 NRS Report and March 2019 NRS Letter. The May 2019 evaluation was conducted as a follow-up examination so that NRS could perform a comparative analysis of Plaintiff's July 2018 neuropsychological testing, the findings of which are set forth in the July 2018 NRS Report. As the May 2019 NRS Report explicitly states, Plaintiff's "neuropsychological findings remained unchanged with mild areas of improvement and decline." (AR at 904.) Thus, rather than undermining the earlier opinions, the May 2019 evaluation confirmed that Plaintiff's cognitive deficits had largely persisted.

The consistency between the reports is further demonstrated by their nearly identical conclusions regarding Plaintiff's functional limitations. Both the July 2018 and May 2019 NRS

[3] The July 2018 NRS Report and March 2019 NRS Letter do not appear to be "rebuttal reports," contrary to the ALJ's statement otherwise. Rather, these appear to be general reports related to Plaintiff's neurological testing. The NRS team did draft a rebuttal report (AR at 922), but that is separate from the reports at issue in the ALJ's opinion.

Reports concluded that Plaintiff would "experience problems with complex activities of daily living." (AR at 425, 908.) Given these findings, the Court cannot discern how the May 2019 evaluation is inconsistent with the July 2018 NRS Report or the March 2019 NRS Letter. Instead, the ALJ appears to have selectively relied on the references to "mild" impairments while disregarding the examination's overall conclusions. Such a mischaracterization of the medical evidence does not constitute substantial evidence supporting the ALJ's decision. *See Thomas v. Kijakazi*, Civ. No. 23-304, 2023 WL 7174222, at *5 (E.D. Pa. Oct. 31, 2023) (holding that the ALJ's mischaracterization of evidence was improper and potentially led to a flawed RFC).

The ALJ also found the August 2019 NRS Letter unpersuasive because it was purportedly inconsistent with the medical evidence. (AR at 1280.) In that letter, Drs. Hillebrecht and Greco opined that Plaintiff would have difficulty following short, simple instructions. (*Id.* at 958.) According to the ALJ, that opinion is inconsistent with Plaintiff's "80-84 IQ scores, adequate performance on some treatment computer exercise programs and verbal comprehension within normal limits on IQ testing." (*Id.* at 1280.) However, with respect to Plaintiff's IQ scores, Judge Wolfson already rejected this very rationale on remand, explaining that:

> Contrary to the ALJ's stated reasoning, Plaintiff's full-scale IQ scores are hardly the noteworthy features of the NRS reports. Indeed, as noted, both reports include a comprehensive analysis of Plaintiff's decreased cognitive functioning, thus speaking to the "supportability" and "consistency" of Drs. Hillebrecht and Greco's opinion. *See* 20 C.F.R. § 404.1520c. While Plaintiff may have achieved IQ scores in the low average range, such scores do not provide a complete narrative of Plaintiff's cognitive abilities and may not, for instance, account for Plaintiff's memory deficiencies, which her doctors describe as her most prominent impairment. (A.R. 941.) Importantly, as Plaintiff's treating neuropsychologists, Drs. Hillebrecht and Greco issued the August 2019 opinion regarding Plaintiff's limitations with full knowledge of her IQ scores.

(AR at 1429.)

This Court once again reiterates the same point previously articulated by Judge Wolfson. That is, the ALJ's reliance on Plaintiff's IQ scores ignores the comprehensive neuropsychological testing and clinical findings underlying Drs. Hillebrecht and Greco's opinion. Those physicians were fully aware of Plaintiff's IQ scores when they concluded that she would have difficulty following even short, simple instructions, and the ALJ identified no medical evidence demonstrating that the IQ scores undermined that conclusion.

Similarly, the ALJ also improperly discounted the August 2019 NRS Letter because it was inconsistent with Plaintiff's reported activities of daily living. (AR at 1280.) However, this argument had also been rejected by Judge Wolfson. (AR at 1429) ("Plaintiff's own statement about her activities or intentions with respect to volunteering are not sufficient to reject the opinions of Plaintiff's treating neuropsychologists."). Indeed, Plaintiff's limited daily activities do not undermine the detailed neuropsychological findings or the opinions of Drs. Hillebrecht and Greco regarding her cognitive limitations. The ALJ therefore erred by relying on Plaintiff's reported activities of daily living as a basis for discounting the August 2019 NRS Letter.

The ALJ's reliance on Plaintiff's performance on computerized cognitive exercises is similarly unpersuasive. The decision does not explain how Plaintiff's ability to adequately complete certain treatment exercises translates into an ability to consistently follow short, simple instructions in a work environment. Nor does the ALJ reconcile that isolated evidence with the extensive neuropsychological testing documenting Plaintiff's persistent cognitive deficits. Absent such an explanation, the ALJ's conclusion is not supported by substantial evidence.

The ALJ's rejection of Dr. Gashlin's and Dr. Noy's opinion suffers from the same deficiencies. Dr. Gashlin opined that Plaintiff would be off task for more than 50% of the workday, but the ALJ found this unpersuasive because of Plaintiff's IQ score. As discussed above, the ALJ's reliance on Plaintiff's IQ score was improper. Likewise, Dr. Noy opined that Plaintiff would be

absent from work more than four days per month, would be off task for 25% of the workday, and suffered from memory loss that precluded her from working. The ALJ rejected Dr. Noy's opinion, a determination that Defendant now expressly concedes did "not comply with the regulations." (Moving Br. at 7.) That concession further underscores the lack of substantial evidence supporting the ALJ's evaluation of the medical opinion evidence.

In sum, the ALJ's rejection of the medical opinions by the NRS providers, Dr. Gashlin, and Dr. Noy was not supported by substantial evidence. Had the ALJ properly evaluated these opinions, Plaintiff's RFC necessarily would have included significantly greater mental limitations, including limitations in following even short, simple instructions, working independently without supervision, and maintaining attention and persistence throughout the workday.[4] *See Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999) ("Treating physicians' reports should be accorded great weight, especially 'when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time.'") (internal citation omitted). Given that the Vocational Expert ("VE") testified that there are no jobs that exist in the national economy for individuals that would be off task 15% of the day, and Dr. Gashlin opined that Plaintiff would be off task for more than 50% of the workday and Dr. Noy opined that Plaintiff would be off task for more than 25% of the workday, the Court holds that an award of direct benefits is appropriate in this case. Finally, an award of benefits is particularly appropriate in this case given the extraordinary delay and the ALJ's repeated rejection of medical evidence based on rationales that Judge Wolfson had already determined were improper. *See Morales v. Apfel*, 225 F.3d 310, 320 (3d Cir. 2000) (holding that an award of benefits was the proper remedy due to the length of the

[4] Defendant's argument that remand is appropriate so the ALJ can resolve the contradictory evidence between the state agency opinions and the other medical opinions is unpersuasive. As the ALJ already found, Plaintiff's "impairments are more limiting than [what] was concluded by the state examiners." (AR at 1280.) The ALJ came to this conclusion because of the additional medical evidence that Plaintiff provided throughout the course of her case. (*Id.*)

delay and a determination that the claimant's mental impairments prevented him from engaging in substantial gainful activity); *B.I.V.R. v. O'Malley*, Civ. No. 22-5143, 2024 WL 3951055, at *14–15 (E.D. Pa. Aug. 27, 2024) (awarding claimant benefits after determining that the her mental health limitations were improperly excluded from her RFC and the VE found those limitations to be work-preclusive).

## V. CONCLUSION

For the reasons stated above, the Commissioner's decision denying Plaintiff's application for benefits is **VACATED** and the case is **REMANDED** for an award of disability benefits within sixty days. Defendant's Motion is **DENIED**. An accompanying order will follow.

Date: July 30, 2026

s/ Zahid N. Quraishi
**ZAHID N. QURAISHI**
**UNITED STATES DISTRICT JUDGE**